UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM SCOTT SLOAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:23-cv-01680-TWP-TAB ) |
| SHERIFF DWAYNE BURGESS Sheriff of Johnson County Indiana, MAJOR REINHART Deputy of Johnson County Indiana, LT. C. KAKAVECOS Deputy of Johnson County Indiana, DEPUTY VANDAGRIFFT Deputy of Johnson County Indiana, SGT. KENDAL Deputy of Johnson County Indiana, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS'
RENEWED MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on two Motions for Summary Judgment filed by Defendants Sheriff Duane Burgess ("Sheriff Burgess"), Major Rhinehart, Lt. C. Kakavecos, Deputy Vandagrifft, and Sgt. Kendal (collectively "the Defendants")[1]. (Dkts. 56, 78). Plaintiff William Scott Sloan ("Sloan") filed this action alleging the Defendants failed to protect him from another inmate when he was a pretrial detainee at the Johnson County Jail ("the Jail"). Defendants initial motion for summary judgment was effectively mooted by the subsequent motion, and an order from the Magistrate Judge. For the reasons explained below, the Defendants' original motion for summary judgment is **denied** as moot, and the renewed Motion is **granted**.

---

[1] Defendants have identified misspellings in the name of Sheriff Burgess and Major Rhinehart, which the Court will direct the clerk to correct.

# I. <u>STANDARD OF REVIEW</u>

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

The summary judgment record contains video of the incident. "[W]here a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's

version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 n.9 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

## II. BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the Sloan and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. Factual Background

In early 2022, Sloan was a pretrial detainee at the Jail. (Dkt. 1 at 3). On February 1, 2022,[2] Sloan was assaulted by fellow detainee Marthan Lewis ("Lewis"). *Id.* at 3; (Dkt. 80-1 ¶ 2); (Dkt. 73 (video recording from Feb. 1, 2022). Sloan sustained a broken jaw, broken nose, and perforated ear drum, and needed surgery at an outside hospital. (Dkt. 1 at 4).

In his sworn Complaint, Sloan affirms that Lewis was a person with known violent tendencies and he disliked persons of the opposite race such as Sloan. *Id.* at 3. Another inmate named Moses Collins ("Collins") "spent a lot of time hyping Lewis up and feeding his paranoia." *Id.* at 10-11. Sloan had informed Sgt. Kendal "of continuing issues with Lewis and Collins . . . ." and Sgt. Kendal "had first hand knowledge of the threat to safety Lewis posed." *Id.* at 15. Sloan personally informed defendant Sheriff Burgess of alleged threats to inmate safety "and [Sheriff Burgess] never responded." *Id.* Sloan alleges that Major Rhinehart "failed to act in response to a threat to inmate safety when made aware." *Id.* Sloan alleges that Lt. Kakavecos was "aware of a possible harm to inmates both before and after my assault." *Id.* Finally, Sloan alleges that Deputy Vandagrifft "was aware of the violent threat Lewis posed being involved in investigation of

---

[2] Sloan's complaint alleged the incident took place on February 2, 2022 but the parties agree that it actually took place on February 1, 2022.

3

incidents involving Lewis. He could have separated [Lewis] from population but failed to do so." *Id.* at 16.

However, in response to Defendants' request for admissions, Sloan admitted that "[p]rior to February 2, 2022, you never inform [sic] any Johnson County Defendant or any person who was employed at the Johnson County Jail in writing that Marthan Lewis posed any specific threat to you." Dkt. 80-2 at 8-9 (admission 8).[3] In a separate request for admission, asking whether the Johnson County Defendants had prior knowledge that Lewis posed a threat to him, Sloan responded, "Sloan told [non-defendant] Correctional Officer Quentin Oxendine when Officer Oxendine was on rounds that Lewis was dangerous and told many people he wanted to fight Caucasian inmates." *Id.* at 11 (admission 11). The only documented complaint about potential violence that Sloan submitted prior to February 1, 2022 stated:

> We have an inmate in the block, moses collins, that is causing problems among other inmates. He is violent and continually tries to intimidate other inmates and continually yells and makes racist remarks. Other inmates have tried to speak to him about his behavior but it continues to get worse. He continually play fights with people and some of the want no part in playing. For everyones safety he should be taken out before someone gets physical with him.

Dkt. 71, row 834 (HomeWav Jail kiosk records). This complaint was submitted on January 16, 2022. *Id.* A Jail staffer with the email handle "cnix" responded to the complaint and stated, "I have advised staff." *Id.*

---

[3] Sloan made this admission while also objecting that the requests for admission were not timely served. Sloan restates this objection in a footnote in his response brief. (Dkt. 85 at 11 n. 30). His objection is based on cases from other districts holding that requests for admission served 30 days before the close of discovery were untimely, because the additional time afforded for a response to the requests, because of service of the requests and response thereto, would extend beyond the close of discovery. *See Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp.3d 1311, 1316-17 (M.D. Fla. 2015). This Court's scheduling order, however, plainly allowed service of any discovery requests up to 30 days before the discovery deadline. (Dkt. 39 at 4). Defendants' requests for admission were timely under that order. Sloan also faults the wording of the requests for admission as indicating that the assault took place on February 2, not February 1, 2022. However, as noted, the February 2, 2022 date was the date originally alleged by Sloan as the date of the assault.

There is a video recording of the altercation between Sloan and Lewis. (Dkt. 73). At the outset, another inmate is in cell S1 before Lewis and Collins go into it and appear to argue with the other inmate. Sloan is watching television in the dayroom with other inmates. At the 35 second mark in the video, Sloan gets up and walks to cell S1. The view of cell S1 is partially obscured by a stairwell. However, Sloan can be seen gesturing while talking to Lewis, including pointing several times towards the door and to the dayroom. Collins closes the cell door, but he (and another inmate nearby) do not hold the door closed; instead, they walk away from the door.[4] Sloan raises his arms a few times while talking to Lewis. At the 1:05 mark, Lewis begins punching Sloan. At the 1:14 mark, Lewis throws open the cell door and walks out and then goes into cell S3. At the 1:40 mark, Sloan walks to S3 and continues to argue with Lewis and Collins as Collins pushes Sloan away. At the 1:56 mark Sloan reapproaches cell S3 and throws off some kind of covering that was on the cell door while continuing to argue with Lewis. At the 2:25 mark, Lewis leaves cell S3 and circles around the dayroom as Sloan yells at him. At the end of the video, which lasts three minutes and twenty-three seconds, Lewis appears to walk out of the dayroom altogether.

In opposition to summary judgment, Sloan has designated a sworn statement from Lewis in which he describes what "really happened that day" between him and Sloan. (Dkt. 85-2). Lewis states that he and Sloan had been arguing "about who was going to watch who's TV show at that time . . . ." *Id.* He apologized for having hurt Sloan and denies that he intended to hurt him. *Id.* He also states that he thinks Sloan was "treated poorly by Johnson County Jail Staff" and that in particular, Deputy Vandagrifft is a liar. *Id.* Sloan does not deny that the specific altercation between

---

[4] Sloan alleged in his complaint that "when I turned to leave the cell the door was held shut by a crowd of inmates outside the cell . . . ." (Dkt. 1 at 4). The video evidence directly contradicts this assertion.

him and Lewis arose out of a dispute over which television show would be on in the dayroom.[5] Sloan contends that he only went into cell S1 after Lewis threatened to destroy some of his property. (Dkt. 1 at 3).

**B.    Procedural Background**

Sloan filed his complaint on September 11, 2023. (Dkt. 1). At screening, the Court allowed him to proceed on Fourteenth Amendment failure-to-protect claims against Sheriff Burgess, Sgt. Kendal, Deputy Vandagrifft, Lt. Kakavecos, and Major Rhinehart.

The Court recruited counsel to represent Sloan for settlement purposes only. (Dkt. 51). However, following an unsuccessful settlement conference, recruited counsel did not move to withdraw and they have continued to represent Sloan. The Court appreciates recruited counsel's continued participation in this case.

Defendants originally filed a motion for summary judgment on March 14, 2025. (Dkt. 56). Thereafter, Plaintiff's filed a Rule 56(d) Motion to Vacate Time to Respond to Defendants' Motion for Summary Judgment (Dkt. 66), which the Court granted on April 25, 2025. (Dkt. 68). In a subsequent Order, Sloan was allowed to withdraw his prior deemed admissions as permitted by Federal Rule of Civil Procedure 36(b), and to submit new responses to the requests for admission. (Dkt. 75). Thereafter, Defendants filed a renewed Motion for Summary Judgment on July 30, 2025. (Dkt. 78); Sloan filed a response in opposition (Dkt. 85), and Defendants replied (Dkt. 87).  The renewed Motion for Summary Judgment is now ripe for ruling.

---

[5] Although Sloan challenges much of a declaration from Deputy Vandagrifft, he does not challenge Vandagrifft's statement that "[Sloan] was watching TV and did not want to change the channel and this apparently agitated Mr. Lewis and led to the altercation." (Dkt. 80-1 ¶ 16).

### III.   DISCUSSION

As an initial matter, the Court **denies** as moot, the original Motion for Summary Judgment, (Dkt. 56), because that motion has been superseded by the renewed Motion at Dkt. 78.

In the renewed summary judgment motion, Defendant argue there are no genuine issues as to any material facts related to the claims filed against them, and they entitled to judgment as a matter of law. Sloan contends that the Defendants lack admissible evidence on summary judgment; instead their motion relies on inadmissible hearsay, speculative assertions, and sensational allegations of perjury, rather than competent evidence; and Defendants apply the wrong legal standard both procedurally and substantively. (Dkt. 85 at 4). The Court will first address the evidentiary disputes before turning to the substantive claims.

### A.   Evidentiary Objections

Sloan has objected to much of a declaration submitted by Defendant Deputy Vandagrifft, primarily on hearsay and lack of personal knowledge grounds. (Dkt. 85-1). Deputy Vandagrifft's declaration mostly discusses his investigation into the altercation between Sloan and Lewis. To the extent the declaration relates things said to Deputy Vandagrifft by non-parties, the Court agrees that such statements constitute hearsay.

Sloan also objects to Deputy Vandagrifft discussing parts of the surveillance video preceding the altercation between him and Lewis. Deputy Vandagrifft did not preserve this video footage because he did not think it was "relevant for purposes of the potential criminal charges due to the altercation." (Dkt. 80-1 ¶ 7).

Although Sloan suggests that failure to preserve more of the surveillance video constitutes spoliation of evidence, Sloan has not submitted a declaration of his own, indicating what the rest of the video might have depicted that would be relevant to his claims in this case. A finding of

7

spoliation is "proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent" and the evidence was destroyed in "bad faith." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). "Bad faith is a question of fact like any other, so the trier of fact is entitled to draw any reasonable inference." *Mathis v. John Moreden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998). Importantly, "bad faith" means "destruction for the purpose of hiding adverse information." *Id.* That is, sanctions may not be imposed just because evidence was destroyed or even just because it was destroyed intentionally. Instead, "the crucial element is not that the evidence was destroyed but rather the reason for the destruction." *Park v. City of Chi.*, 297 F.3d 606, 615 (7th Cir. 2002). The movant bears the burden of showing bad faith. *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2012).

Sloan does not dispute that not all surveillance video footage can be preserved forever and that storage limitations exist, requiring choices to be made as to what to preserve and what not to preserve. Here, without any indication from Sloan as to what any additional surveillance footage might have shown, it would be mere speculation to infer that that footage was destroyed in bad faith. Sloan did not file this lawsuit for nearly a year and seven months after the incident at issue. It would not have necessarily been clear at the time of the incident that Sloan would later claim that the assault was the result of Defendants' failure to protect. Accordingly, Spoliation sanctions would be inappropriate here.

Still, the Court has not considered those parts of Deputy Vandagrifft's declaration that relate hearsay statements made by non-parties or anything related to non-preserved video footage. On the other hand, Sloan does not directly object to the preserved video evidence that does exist or suggest that it is inaccurate in any way. That said, the Court now turns to the merits of the case.

**B.     Failure to Protect**

Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). As noted by the parties, because Sloan was a pretrial detainee at the time of the incident here, the Fourteenth Amendment governs his failure-to-protect claim. The elements of such a claim, as adopted by the Seventh Circuit, are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Kemp v. Fulton Cnty.*, 27 F.4th 491, 496 (7th Cir. 2022) (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)) (cleaned up). Unlike failure-to-protect cases arising under the Eighth Amendment, a pretrial detainee need not show that a defendant was subjectively aware of a substantial risk of serious injury. *Id.* Still, "the defendant officer must intend to carry out a certain course of actions; negligence is not enough." *Id.*

Causation is still very much an element of a Fourteenth Amendment failure-to-protect claim as it is for an Eighth Amendment claim. Indeed, causation is a required element of any claim brought under 42 U.S.C. § 1983. *See Roe v. Elyea*, 631 F.3d 843, 863-64 (7th Cir. 2011) (citing *Heck v. Humphrey*, 512 U.S. 477, 483 (1994)). "A successful § 1983 plaintiff therefore must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages." *Id.* at 864 (emphasis in original). Causation has two requirements: (1) the actions complained of must be the "cause-in-fact" of the injury, meaning that

9

the injury would not have occurred absent the conduct; and (2) the act must be the proximate cause of the injury, meaning that it must be the type of injury a reasonable person would see as a likely result of his or her conduct. *Whitlock v. Brueggemann*, 682 F.3d 567, 582–83 (7th Cir. 2012). Even if the Court were to assume for summary judgment purposes that any of the Defendants acted objectively unreasonably with respect to a risk of harm to Sloan,[6] the designated evidence, most importantly the video evidence, demonstrates as a matter of law that no Defendant caused his injuries.

In *Hunter v. Mueske*, 73 F.4th 561 (7th Cir. 2023), the Court found there was sufficient designated evidence for summary judgment purposes that one prison official was deliberately indifferent to a risk to the plaintiff's safety from another inmate and could have done more to separate the plaintiff and the other inmate. Still, the Court held that the official was entitled to summary judgment because no reasonable jury could conclude that the plaintiff's injuries were caused by the official. *Id.* at 568. Specifically, there was video evidence indicating that the plaintiff approached the other inmate of his own volition and initiated an interaction, which led to the assault in which the other inmate severely injured the plaintiff. *Id.* The plaintiff's "deliberate choice to approach" the other inmate "was an unforeseeable superseding cause of his injury" that severed the official's liability. *Id.* at 569. The plaintiff's "decision to approach [the other inmate], and his resulting injury, were not within the scope of the foreseeable risk generated by [the official's] conduct." *Id.* (citing *Buckman v. Halsey*, 2021 WL 4127067 (11th Cir. Sept. 10, 2021) (holding defendant prison guard was entitled to summary judgment on failure-to-protect claim, even though defendant was aware of threats another inmate made to plaintiff, where plaintiff started fight when he could have avoided the other inmate altogether)).

---

[6] The evidence on this point is very slight, at best, given contradictory or entirely absent evidence as to whether any Defendant knew or even should have known that Mr. Lewis posed a threat to Sloan.

10

In some situations, even if a plaintiff initiates a fight with another inmate, it does not necessarily defeat a failure-to-protect claim if a prison official's inaction creates a situation that would inevitably lead to confrontation and violence. *See Santiago v. Walls*, 599 F.3d 749, 759 (7th Cir. 2010). In *Santiago*, the Court found sufficient allegations of causation to avoid dismissal in a failure-to-protect case where the warden allegedly placed the plaintiff in cells with other inmates "with whom there was bound to be a confrontation." *Id.* The Court found this allegation "sufficient, at the pleading stage," to state a failure-to-protect claim. *Id.*

By contrast, as *Hunter* made clear, "a failure-to-protect claim may be defeated by plaintiff's having instigated the fight when the plaintiff instigates a physical altercation that he otherwise could have avoided." *Johnson v. Johnson*, 2025 WL 2324264, at *5 (N.D. Ill. Aug. 12, 2025) (citing, in addition to *Hunter*, *Reed v. Black*, 2024 WL 216674, at *2-3 (N.D. Ill. Jan. 19, 2024) (no failure-to-protect claim where detainee's own allegations showed that he was a willing participant in the fight and escalated the violence by running up on the other inmate before plaintiff was tackled and thrown to the ground); *Gueller v. Shawano Cnty.*, 2022 WL 993532, at *4 (E.D. Wis. Apr. 1, 2022) (inmate did not have claim for failure-to-protect when he placed himself in harm's way by continuing to "engage and provoke" alleged attacker instead of separating himself from the situation or notifying staff); *Lemmons v. Durant*, 2011 WL 4633104, at *4 (C.D. Ill. Oct. 4, 2011) (granting summary judgment to officials at detention center where plaintiff twice confronted alleged attacker, including by coming out of his room to do so)).

Here, even if Sloan did not throw the first punch, the evidence is abundantly clear that he initiated a heated confrontation with Lewis. The video evidence shows that Lewis entered the S1 cell area approximately 33 seconds prior to Sloan (Video, 1:06:42-1:07:15). Sloan entered the S1 cell area alone and of his own volition, and began yelling and gesturing at Lewis at a close distance.

11

(Video, 1:07:15). The dispute also was over which TV show to have on in the dayroom – it was not racially motivated, which Sloan had contended was why he had been fearing for his safety. Rather than avoiding contact with a person whom Sloan claimed to fear, he directly confronted him. Under these circumstances, whatever the Defendants might have known about Lewis, or the general potential for violence caused by Lewis, Sloan's actions in deciding to directly confront Lewis about TV viewing was an unforeseeable, superseding cause of his injuries. No reasonable jury could conclude that any Defendant caused Sloan any injuries.

## IV.   CONCLUSION

For the reasons explained in this Order, The second motion for summary judgment is **GRANTED**. Dkt. [78]. The Defendants' first motion for summary judgment. Dkt. [56] is **DENIED** as moot. The **clerk is directed** to change the first name of Defendant Burgess from "Dwyane" to "Duane," and the name of Defendant "Reinhart" to "Rhinehart."

Final judgment consistent with this Order, the Court's screening order, (Dkt. 21), and the order dismissing Defendant Nurse Melinda, (Dkt. 36), shall issue by separate entry.

**IT IS SO ORDERED.**

Date: 2/10/2026

_[signature]_

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

WILLIAM SCOTT SLOAN
290119
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, IN 46914-9810